## Commonwealth *v.* Eckhart, Appellant.

312

Argued November 22, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas S. McCready,* for appellant.

*George T. McKinley,* First Assistant District Attorney, with him *Murray Mackson,* Assistant District Attorney, and *John Deutsch,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 16, 1968:

This is an appeal from a conviction of first degree murder. Briefly, the facts are as follows. Defendant and decedent, one Carol Juliano, had been living together in a meretricious relationship at her home. They quarrelled, he threw her down, and he left the house. When appellant returned the next evening, Carol was gone. On the following day, defendant sought to contact Carol. Told to call back later, he proceeded to get very drunk. When a meeting was finally arranged, appellant and Carol argued once more. Carol drove away with her sister and the sister's two children. Appellant, being driven by one Reiber, followed. Eventually Carol stopped and the car carrying appellant pulled alongside. Appellant attempted to get into Carol's car, but Carol got out the other side. Appellant followed her. He then threw a beer bottle at her. Although appellant's memory deserted him at this point, the testimony of Carol's sister was that appellant beat Carol over the head with a rock. Appellant then took Carol's car and drove off. Five days later, appellant surrendered at 1:00 a.m. on May 22, 1965. At 8:30 a.m., he was interrogated and confessed. After trial by jury, appellant was found guilty of murder in the first degree and sentenced to life imprisonment.

Appellant makes four assignments of error. We find no merit in three of these. One assignment of error was that the evidence could not support a verdict of murder in the first degree because there was no evidence that the killing was willful, deliberate and

314

premeditated. We disagree. Recently in *Commonwealth v. Howard*, 426 Pa. 305, 317, 231 A. 2d 860 (1967), we repeated what we have often said: " 'Indeed, the jury could have found a specific intent to kill and therefore first degree murder from "the offender's use of a deadly weapon, for while an intention to kill may be shown by the defendant's express words or declarations or other conduct, such intent may be just as effectively inferred from the deliberate use of a deadly weapon upon a vital part for a manifest purpose." ' . . . The action of appellant supplies specific intent, willfulness, deliberation and premeditation essential for a determination of murder in the first degree." See also *Commonwealth v. Ballem*, 386 Pa. 20, 123 A. 2d 728 (1956) and *Commonwealth v. Samuel Jones*, 355 Pa. 522, 50 A. 2d 317 (1947), and cases cited therein. We have no doubt that use of a rock upon decedent's head constitutes use of a deadly weapon upon a vital part of the body.

Appellant also assigns as error the procedure for selecting a jury, specifically, originally calling a group of twelve. Although the procedure used may have been a bit confusing, it is difficult to see how appellant was prejudiced. Moreover, appellant's counsel made no objection to the procedure when it took place and thus waived any objection he might have had. Certainly the deviations from the norm did not rise so high as to constitute a deprivation of the essential right to trial by jury. The Constitution of the Commonwealth, Article I, §6, guarantees that "Trial by jury shall be as heretofore, and the right thereof remain inviolate." However, "it is well settled that the word 'inviolate' as used in the constitutional provision quoted means freedom from substantial impairment. It does not import rigidity of regulation in the manner of impanelling a jury. The cardinal principle is

that the *essential features* of trial by jury as known at the common law shall be preserved. The fundamental law preserves the substance of the right; details of administration which leave the enjoyment of the right unaffected are of no constitutional concern." *Commonwealth v. Fugmann,* 330 Pa. 4, 28, 198 A. 99 (1938).

The third assignment of error was the alleged improper admission into evidence of appellant's statement. Appellant's objection to its admission was properly overruled by the court below as untimely. Rule 324(b) of the Pennsylvania Rules of Criminal Procedure provides: "Such application [to suppress a confession on the ground that defendant was denied his right to assistance of counsel at the time the confession was made] shall be made only after a case has been returned to court and not later than five days before the first day of the week in which the case is listed for trial. An application may be made thereafter only if opportunity therefor did not previously exist or the interests of justice require it. If timely application is not made hereunder, the issue of the denial of the defendant's right to assistance of counsel at the time the confession was made shall be deemed to be waived." Appellant's application, in chambers during trial, clearly came too late. He argues that the instant case is one in which "the interests of justice require" action on the late application. Appellant's argument seems to be that since he was denied the right to counsel, the interests of justice require that he be granted a hearing on the question. Although it is not at all clear what is meant by "the interests of justice", it clearly cannot mean that the late application be considered whenever there was a denial, for the determination of that question involves the same issue which the defendant has waived by his late application. In any

event, appellant was not improperly denied the assistance of counsel at the time of his confession, so even under appellant's view, "the interests of justice" do not require action on his late application. The trial in this case took place in January of 1966, making it post-*Escobedo*, but pre-*Miranda*. Thus, the *Escobedo* rules obtain. *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966).[1] Appellant incorrectly relies on *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965), as the definitive interpretation of *Escobedo*. *Negri* held that where a person in police custody is not warned of his constitutional right to remain silent during an accusatorial examination, it is necessary that he then be given the assistance of counsel to protect that right, even if such assistance is not requested, in the absence of an intelligent and understanding waiver. Even under *Negri,* the right to counsel without request applied only where defendant had not been warned of his right to remain silent, and he was warned here. *Negri,* in any case, was overruled by *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966), which reinterpreted *Escobedo* in the light of *Miranda* and *Johnson,* and held that a person is not unconstitutionally deprived of the assistance of counsel during police questioning unless he is not effectively warned of his right to remain silent *and* he requests such assistance. Thus, in no way can it be said that appellant's statement was improperly admitted.

The same, however, cannot be said for the admission into evidence of the Commonwealth's Exhibit 16, a photograph showing the condition of the decedent's skull after the autopsy on her body had been performed.

---

[1] On retrial, however, the *Miranda* rule will apply since that trial will have begun after June 13, 1966, the date of the *Miranda* decision. *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966).

That admission constituted error, for which a new trial is necessitated. We recently treated this situation in *Commonwealth v. Powell*, 428 Pa. 275, 241 A. 2d 119 (1968), where we recognized that the admission of photographs exhibiting the body of a deceased is primarily within the discretion of the trial judge. We there stated: "Unless there is a flagrant abuse of discretion, this Court has been loath to conclude that reversible error exists. Commonwealth v. Dickerson, 406 Pa. 102, 176 A. 2d 421 (1962); Commonwealth v. Novak, 395 Pa. 199, 150 A. 2d 102 (1959); and Commonwealth v. Peyton, 360 Pa. 441, 450, 62 A. 2d 37, 41 (1948)." Yet we found such an abuse of discretion by applying the test of "whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." It is difficult to imagine a photograph more gory, more likely to inflame a jury, than that in the instant case. It was a photograph of decedent's skull with the fissures therein, revealed by pulling the scalp forward. The jury saw a skull and a tangled mass of bloody hair and part of a bloody scalp. Appellee urges that the photograph was necessary to show the force of appellant's blows and that the force came from the front. The Commonwealth's medical witness testified that the jury could get a better understanding of the injuries by viewing the pictures. That testimony appears to be the usual procedure in this sort of case; this court was not impressed by it in *Commonwealth v. Powell*, supra. Assuming however that the photograph as a whole was helpful to the doctor's testimony, that is only because of the skull itself. While the skull itself is not particularly pleasant to view, it is a veritable Michelangelo compared to the gruesome scalp and bloody web of tangled hair. The scalp and hair are

**318**

totally irrelevant, and highly inflammatory. They could easily have been excised from the photograph. That they were not was prejudicial to appellant, and necessitates a new trial.

Judgment reversed and a new trial ordered.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.